[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Linda J. Yollmer, age 45, whose maiden name was Linda J. Schwartz, and prior married name, Linda J. Giarnese, and the defendant Clark S. Vollmer were married at Amenia, New York on November 24, 1988. There are no minor children issue of the marriage although the plaintiff has two children by her former marriage, a son Robert, age 17 and a daughter Diane, age 16. Both parties agree that the marriage has broken down irretrievably and therefore the sole issue is the determination of proper financial orders.
The parties have been married approximately three (3) years. In July of 1987, prior to the marriage, the plaintiff became employed part-time as the defendant's personal care attendant. The defendant was involved in an accident in 1978 which left him a paraplegic. He brought a claim as a result of his injuries and received approximately $421,000.00 in settlement.
The plaintiff worked at Rescue Center in Litchfield. From her previous marriage, she had a teenage son who is a quadriplegic and, consequently, when she needed extra income, applied for a job as the defendant's personal care attendant. She began her employment part-time while the defendant still lived with his parents. The defendant subsequently had a quarrel with his parents over money he loaned them out of his settlement. During this time he sought more and more of the plaintiff's time and eventually the plaintiff quit her job at Rescue. Soon the defendant and the plaintiff began personal relationship culminating in their marriage soon after the plaintiff's divorce.
The primary marital asset, the marital home, was paid for by the defendant. The plaintiff did extensive work, both inside and outside on the premises. A substantial addition was put on the house through grant monies because of the defendant's and the plaintiff's son's disabilities. It was the plaintiff who found the grant money, processed the paperwork, canvassed the neighbors collecting signatures of waivers for the addition and coordinated the work.
During the marriage, the defendant began drinking excessively. As a result, he didn't shave, remained in bed most of the day, took extra medication and was not the caring companion the plaintiff married. While the defendant was drinking either by himself or with the friends he invited to live with him, it was the plaintiff who tended to the household, as well as all of the defendant's personal care.
Finally, despite the defendant's express protestations to the plaintiff CT Page 7926 to quit her job initially, he demanded she find employment. She commenced work at Carl's Carpet. While there she arranged for all the carpets and floor covering in the house at her employee discount and arranged all the installations herself.
The defendant has squandered much of the rest of his inheritance on investments his family put him up to in the Virgin Islands. Lawsuits are pending for the defendant to recoup his losses, from which he may recover $25,000.00 plus interest in addition to other funds as yet undetermined.
At the time of the plaintiff's dissolution from her first husband, she paid to him the sum of approximately $13,000.00 to pay for joint debts. Of said sum, $10,800.00 came from the sale of the plaintiff's business, Sweets Things, and the balance was paid by the defendant. Since the parties' separation, the plaintiff has commenced a business venture called "Karpet Plus" with another individual with whom she now lives.
The defendant purchased for the plaintiff two vehicles, a Ford Van, equipped for the plaintiff's son and a truck. After this action was brought, the defendant transferred these vehicles to the plaintiff who sold them for $7,900.00. She now drives a company car which pays for gas, oil, maintenance and insurance. At the time of the separation, the plaintiff took $2,500.00 from the parties' joint account. The defendant paid $5,500.00 for the plaintiff's first divorce as well as $900.00 on one of her charge accounts.
As stated previously, the parties put an addition on the jointly owned home to accommodate the plaintiff's son. This addition represents a $51,580.00 second mortgage which reduces the net equity in the property but need not be repaid so long as the property is occupied by a disabled person.
From the evidence, it is apparent that the plaintiff performed considerable services for the defendant during the time she lived with him. It is also clear that the defendant supported the plaintiff during that time and was generous with his money which at this time is depleted with the exception of $1,800.00 and an interest in an escrow account of $3,938.92. This sum resulted from a settlement in a suit against the seller of the home on a claim of a defective septic system. To commence this suit the defendant paid a retainer of $2,000.00.
There is no question but that the defendant is totally disabled and requires constant daily care. His only income is a disability payment of $194.65 weekly and rent of $58.14. The major asset is the jointly owned family home valued between $180,000.00 and $200,000.00 with mortgages of $63,500.00. In addition the defendant has four lots in Paris, Tennessee, a 1984 Ford Van and a 1990 Argo recreational vehicle.
The plaintiff suffers from asthma but otherwise appears to be in CT Page 7927 good health. She has demonstrated an earning capacity and while her current business does not at present show a profit, it shows gross sales of $132,894.00 as of December 31, 1991.
Taking all factors into consideration, including the respective capacities of the parties, the length of the marriage, the payments previously made by the defendant and their relative needs, the following orders may enter:
1. The marriage is dissolved on the grounds of irretrievable breakdown.
2. The plaintiff shall transfer all her right, title and interest in the jointly owned home located at 9 Oaklawn Terrace, Barkhamsted to the defendant who shall be responsible and hold the plaintiff harmless for any mortgage, taxes, insurance, etcetera on said property.
3. The defendant shall retain all the assets shown on his financial affidavit and will be solely responsible for the payment of the liabilities shown thereon.
4. The plaintiff shall retain any of her assets and shall be responsible for her debts, all as shown on her financial affidavit.
5. The defendant shall be entitled to $2,000.00 from the escrow fund of $3,938.92 and the plaintiff the balance.
6. The plaintiff shall have personal property shown on Exhibit B and the defendant the property shown on Exhibit A.
7. The plaintiff may take a change of name to either her maiden name, Schwartz or Giarnese if she so desires, by notification to the court within ten days.
Judgment may enter accordingly.
PICKETT, J.
EXHIBIT A
FURNISHINGS AT 9 OAR LAWN DRIVE, BARKHAMSTED
DINING AREA UPSTAIRS
Pine Hutch containing glassware 1 double bed and old dresser and beer steins Dining room table with 7 oak chairs Kitchen cabinet Blanket chest CT Page 7928 1 wall clock 1 table clock
LIVING ROOM OUTSIDE
Sofa and chair Picnic table and 4 chairs Wood stove Weber grill Zenith Television and VCR 2 side tables 1 coffee table 1 side table 2 floor lamps Dry sink and shelf 11 table clocks 3 wall clocks 1 grandfather clock 1 old radio 1 reproduction radio
KITCHEN BASEMENT
Butcher block table Refrigerator Knick Knack shelf Freezer Washer Dryer Refrigerator Stove Various kitchen items (pots, pans, small appliances, etc.)
BEDROOM AND STUDY
Game table with 4 chairs Roll top desk Apartment size refrigerator 2 drawer file cabinet Kirby vacuum 1 window air conditioner 1 Zenith Television and VCR ; 2 table clocks 2 lamps Queen size bed 3 side tables 1 dressing mirror 2 cherry chests 1 cherry dresser with mirror
LIST OF PERSONAL PROPERTY ITEMS REMOVED BY LINDA J. VOLLER
1. Some, but not all, of Plaintiff's clothing; CT Page 7929 2. Rob's Clothing; 3. Diane's Clothing; 4. Rob's Bedroom Set; 5. Diane's Bedroom Set; 6. Table and Chairs; 7. Diane's Desk; 8. Four (4) Lawn Chairs; 9. My Kettle Grill; 10. My Cape Cod Dish Set; 11. My Johnson Dish Set; 12. Diane's Television and V.C.R.; 13. Diane's Stereo; 14. Rob's Television and V.C.R.; 15. Rob's Wheelchairs and Comode Chair; 16. Plaintiff's Desk; 17. A Couch from Plaintiff's Mother; 18. Plaintiff's Coffee Table; 19. Rob's Chair; 20. Knives and Forks; 21. Vase and Flowers; 22. Six (6) Baskets; 23. Rob's Computer and Table; 24. Diane's Lamps; 25. One Floor Lamp; 26. One (1) Visionware Roaster 27. Plaintiff's Cake Pans; 28. Christmas Decorations; 29. Plaintiff's Ceramic Angel, Snowman and Santa; 30. Rob's Bikes; 31. Diane's Bikes; 32. Rob's Radio; 33. Hope Chest from Plaintiff's Mother; 34. Plaintiff's Jewelry Box and Jewelry; 35. Twelve (12) Goblets; 36. Two (2) Salt and Pepper Shakers; 37. Iron and Ironing Board; 38. Blow Dryer and Hot Rollers; 39. Drop Leaf Table from Plaintiff's Mother; 40. Eight (8) Custard Cups; 41. Mixer; 42. Punch Bowl; and 43. Pine Cabinet.